UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 4:25-cv-40091

YVETTE YURI LANUZA DIGAN,

            Plaintiff,

v.

LUXCO, INC.,

            Defendants.

**<u>Plaintiff's Opposition to the Defendant's Motion for a Protective Order<br>Styled as a Motion for a Case Management Order</u>**

This case was filed on July 13, 2025.

Luxco, Inc., a corporation that injected what Plaintiff contends was a defective and unreasonably dangerous product that caused Plaintiff extreme burn injuries into the stream of commerce without adequate warnings, under the guise of a request for a Case Management Order, asks this Court for what is tantamount to a protective order that would violate the free speech rights of the Plaintiff, her counsel and the press that are protected by the Federal and State Constitutions. At the same time, such an order would keep important safety information from the public about an explosive liquid that is marketed for use around fire, oral consumption and various household projects. To date, *every* piece of information in the possession of Plaintiff or her counsel – and about which Defendant complains -- comes from publicly available sources. It is Plaintiff's counsel's[1] use of such *public* information about which Defendant complains.

---

[1] Defendant repeatedly complains about the conduct of "Plaintiff's Counsel." These complaints are directed at a particular attorney, Adam Clermont, Esq., who until recently was the lead attorney on the case. As it now stands, the undersigned – who appeared in the case on October 20, 2025 -- is lead counsel on this case. The undersigned had no involvement with the alleged actions and conduct about which Defendant complains.

1

The Defendant's request, however, runs headlong into at least two critical principles that should guide lawyers and this Court. First, the public has a presumptive right of access to all court proceedings, files and discovery in civil litigation, and plaintiffs have a presumptive right to share with the public what they have learned during such litigation. *See, e.g.*, *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789-90 (1st Cir. 1988) (agreeing with the Second Circuit that "[i]t is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public."); *see also In re Agent Orange Product Liability Litigation*, 821 F.2d 139, 145–46 (2d Cir.), *cert. denied*, 484 U.S. 926 (1987), *aff'd* 104 F.R.D. 559, 567 (E.D.N.Y. 1985). Here, since all of the information complained about is a matter of public record uncovered by Attorney Clermont's exceptional pre-filing investigation, Defendant's request should be rejected as a transparent effort to chill Plaintiff's rights to free speech while muzzling Plaintiff and her counsel – in violation of their Constitutional rights -- about significant public safety concerns that continue to imperil the public and that caused Plaintiff foreseeable, horrific, unquestioned harm. *Compare Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1033-1034 (1991) (addressing cognate Nevada Rule, the fact that attorney-petitioner "spoke at a time and manner that neither in law or in fact created any threat of real prejudice" to client's right to a fair trial or to the State's interest in enforcement of its laws and that Rule appears to permit the speech at issue, and subsequent decision to discipline petitioner raises concerns of vagueness and selective enforcement).

Second, the Defendant's motion - a blind and prospective request for an Order related to future discovery conduct that has not occurred – is a request for an

inappropriate prior restraint on free speech rights. Such an Order would be particularly inappropriate given that the "Supreme Court has noted that parties have general first amendment freedoms with regard to information gained through discovery and that, absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit." *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 31–36 (1984); *see also Oklahoma Hospital Ass'n v. Oklahoma Publishing Co.,* 748 F.2d 1421, 1424 (10th Cir. 1984), *cert. denied,* 473 U.S. 905 (1985); *Public Citizen*, 858 F.2d at 780 (*citing Seattle Times*).

Even if this matter was ripe for the Court's consideration of a protective order (related to the fruits of discovery and briefed in accord with related standards), Defendant would have the burden of proving the need for secrecy of each piece of information for which secrecy is sought. As explained by the First Circuit:

> A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, at 264–65 (1970); *see also General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1212 (8th Cir.1973) (burden on movant to make specific demonstration of necessity for protective order), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479–80 (S.D.N.Y.1982) ("the court must find that definite criteria have been satisfied before issuing a protective order"); *cf. Schlagenhauf v. Holder*, 379 U.S. 104, 118–19, 86 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964) (good cause under Fed.R.Civ.P. 35 must be based on more than "conclusory allegations").

*Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7-8 (1st Cir. 1986). No such showing has been made – or can be made – at this time and on this record. *See Com. v. Gerhartsreiter*, 82 Mass. App. Ct. 500, 507 (2012) (finding pre-trial publicity did deprive criminal defendant of fair trial warranting a change in venue because, among other things, the Judge conducted a voir dire to empanel jurors who were impartial); *Com. v. McDuffee*, 7 Mass.

3

App. Ct. 129 (1979), *judgment rev'd on other grounds*, 379 Mass. 353 (1979) (no error in denying continuance where Judge addressed questions to the jury as to their exposure to pre-trial publicity).

Moreover, even if the current dispute involved materials produced in discovery, a protective order would offend the first amendment if: (1) no good cause showing had been made under Rule 26(c); (2) any restriction is not limited to the discovery context; and, (3) the order does not restrict the dissemination of information obtained from other sources. *Id.* at 7 (*citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984)). Here, Defendant asks the Court to disregard all of these factors – while imposing an order that would violate all of them.

The request should be rejected.

### A.   Defendant's Complaints are Largely Red Herrings and Should be Addressed, if at all, by the Board of Bar Overseers

While largely red herrings, Plaintiff will briefly address some of the various issues raised by Defendant's motion.

### 1.   Communications With Luxco and MGP Employees

Some of Defendant's complaints about claimed actions by Plaintiff's counsel arise under Mass. R. Prof. C. 4.2. About two decades ago, this rule was the source of concerted efforts by Defense attorneys in Massachusetts (and elsewhere) to improperly restrict Plaintiff's counsel from conducting appropriate investigations outside of discovery. Those efforts culminated in a triad of cases from the Supreme Judicial Court addressing the proper scope of the rule. *See Messing, Rudavsky & Weliky, P.C. v. President & Fellows of Harvard College*, 436 Mass. 347 (2002) [*Messing*]; *Patriarca v. Center for Living & Working, Inc.*, 438 Mass. 132 (2002) [Patriarca]; *Clark v. Beverly*

*Health and Rehabilitation Services, Inc.*, 440 Mass. 270 (2003) [*Clark*] (holding that Rule 4.2 does not apply to former employees of an organizational defendant).[2]

As currently written, Rule 4.2 states that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Comment [4] to the rule permits "a lawyer having independent justification or legal authorization for communicating with a represented person is permitted to do so." So, for example, written demands required by G.L. c. 93A can be, and are, routinely directed to represented parties without violating Rule 4.2. Comment [7] explains that:

> In the case of a represented organization, this Rule prohibits communications by a lawyer for another person or entity concerning the matter in representation only with those agents or employees who exercise managerial responsibility in the matter, who are alleged to have committed the wrongful acts at issue in the litigation, or who have authority on behalf of the organization to make decisions about the course of the litigation.[3] Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule.[4]

---

[2] Attorneys from Heinlein & Beeler, P.C. that merged into Heinlein Beeler Mingace & Heineman, P.C. represented the Plaintiff in *Clark*. They – as counsel for Plaintiff here -- unsurprisingly remain well-aware of Rule 4.2's provisions.

[3] This sentence states the essential holding from *Messing*.

[4] The language relating to "former constituents" appears to be a codification of *Clark's* holding that Rule 4.2 does not apply to former employees of organizational defendants – thus precluding corporate defense counsel from claiming to represent all present and former employees of organizational defendants precluding contact with Plaintiff's counsel – with the search for true facts being a resultant and intended casualty. *Cf. Clark*, 440 Mass. at 277.

> Courts have long recognized that informal interviews are an exceptionally efficient means for the meaningful gathering of facts. They are generally more conducive to full disclosure and far less costly than the more structured processes of formal discovery, or even informal investigation with opposing counsel present." [citations omitted]. Moreover, in cases where witness testimony is more central than documentary testimony, a ban such as that proposed by Beverly Health might inhibit the vindication of a party's rights because the litigant's counsel could not be certain that the pleadings are sufficiently grounded in facts to meet counsel's obligations of truthfulness to the tribunal. See *Kaveney v. Murphy,* 97 F.Supp.2d 88, 94 (D. Mass. 2000); *Niesig v. Team I, supra* at 372, 559 N.Y.S.2d 493, 558 N.E.2d 1030.

Any analysis of such actions should bear in mind the reality that confronts Plaintiff's counsel in the pursuit of such a case. First, they have an obligation to zealously represent their clients. This, of course, is guided by the rules. The reality, however, is that it is not always easy to tell from the outside when a witness/employee is – or is not – still employed by an opaque organization. The most direct route of making such a determination is to contact them and ask – and nothing in the rules prevents such initial conduct so long as counsel adheres to the applicable rules.

It should be noted that it was not until June 25, 2025, that Defense counsel advised Attorney Clermont that his office represented both MGP *and* Luxco. *See* Def. Ex. 3. Second, Attorney Clermont's forwarding a c. 93A demand letter directly to MGP via its General Counsel and Julie Francis, CEO of MGP appears to be in compliance with the legal authorization and mandate of M.G.L. c. 93A, §9 and the safe harbor provided by Comment [4] to Rule 4.2.

As it relates to the Defense counsel's complaints about Attorney Clermont's contacting employees of the corporate defendant and the dueling accusations of wrongly threatening criminal action to gain advantage in a civil matter, that is -- if either of those counsel deem appropriate -- a matter for a complaint to the Board of Bar Overseers as suggested by Attorney Clermont as early as June 5, 2025. *See* Def. Ex. 2.

Given the above, and in light of the unfortunately delayed representation by defense counsel on June 25, 2025, that they represent *both MGP and Luxco*, going

---

*Clark*, 440 Mass. at 277. Not surprisingly, the SJC in *Clark* rejected the corporate defendants' suggestion of unethical conduct, a priori, on the part of any opposing counsel who may seek or conduct an *ex parte* interview with a former employee. *Id.* at 278.

forward Plaintiff's counsel have no intention of making any further contact with known current employees of MGP and Luxco outside of discovery.

As it relates to former employees, however, under *Clark* and Rule 4.2 they remain fair game for direct contact. Defense counsel's blanket claim of representation of all former employees is as patently inappropriate here – as a matter of Massachusetts law -- as it was in *Clark*.

Going forward, Plaintiff's counsel will pursue the facts of this case where they lead, as they choose, and as is their job, in compliance with the law and applicable rules.

2. **The Claimed Vexatious Communications to Luxco's Counsel and Others**

a. **Luxco's Counsel**

Plaintiff's initial counsel, Attorney Clermont, is based primarily in Hong Kong. Complaining defense counsel is in St. Louis. St. Louis is 13 hours behind Hong Kong. Temporal and geographic reality is that Attorneys in Hong Kong will largely be working when Attorneys in St. Louis are hopefully done for the day. For either, the solution is obvious. Unless one is looking for around the clock billing opportunities, check your email during local business hours. Sending communications about a case during one's normal work hours is hardly vexatious. It is business as usual – for all of us.

While the communications between Attorneys Clermont and Pesce clearly rubbed the other the wrong way at times and were perhaps construed by both in the worst possible light, that is a not an uncommon part of the civil litigation process that by design pits zealous advocates against each other. This is particularly the case when one factors in the reality that email and the written word often fail to convey tone and intent effectively.

In this regard, the Court should note that new counsel has appeared for the Plaintiff in this matter and all parties are now represented by Boston-area counsel. Many of the local attorneys now on this case have long-standing, cordial professional relationships. To the extent that there was what might be viewed as unnecessary "chippiness" in some of the communications, that too might form the basis of a complaint to the Board of Bar Overseers, but it hardly warrants an Article III judge having to play referee.

More importantly, it is not something that the undersigned would expect to continue on Plaintiff's side of the "v."

   b.  **<u>Communications with Third Parties</u>**

Plaintiff, and her counsel, have an absolute right to contact whatever third parties they want. As such, it unclear why Defendant included the information about exchanges between Attorney Clermont and a podcast show host. A review of these materials, however, makes it plain that the show host at issue was well-equipped – through whatever means – to know about his rights to report what he viewed as an offending attorney to the relevant bar disciplinary authorities.

Any protective order restricting the rights of Plaintiff or Plaintiff's counsel to contact third parties would be unnecessary and inappropriate. After more than 30 years of practice in Massachusetts, the undersigned understands his obligations under the Rules in connection with such contacts. Such an understanding of the Rules obviously escaped Missouri-based defense counsel when he advised the undersigned that the way to avoid bothering this Court with this motion was for Plaintiff's Massachusetts counsel to agree

within 3 days to *everything* in Defendant's motion[5] – even the things to which the Defendant obviously has no right.

In any event, the third-party contact section of the Defendant's motion is meritless and warrants none of the relief requested.

> **B.    Plaintiff's Counsel is Permitted to Engage With the Media, and Through Media to – Among Other Things -- Warn the Public About the Explosive Risks Posed by Everclear.**

> **1.    The Rules**

Mass. R. Prof. C. 3.6 provides, in relevant part,:

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

(b) Notwithstanding paragraph (a), a lawyer may state:

> (1) the claim, offense, or defense involved, and, except when prohibited by law, the identity of the persons involved;

> (2) the information contained in a public record;

> (3) that an investigation of the matter is in progress;

> (4) the scheduling or result of any step in litigation;

> (5) **a request for assistance in obtaining evidence and information necessary thereto;**

> (6) **a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest;**

---

[5] On October 30, 2025, the undersigned spoke with Attorney Carl Pesche, counsel for Luxco, Inc. in connection with the present motion and to comply with his obligation under Local Rule 7.1(a)(2) to confer. Attorney Pesche stated that he wanted to know my position on this motion by Friday, October 31, 2025 at noon. I explained to counsel that October 30 was my wife's birthday and that on the following day (Halloween), I would be "trick or treating" with my granddaughter. Attorney Pesche said he understood but then said that he knew I worked weekends and expected a response by Monday at noon.

***

Mass. R. Prof. C. 3.6 (emphasis supplied). Comment [4] to Rule 3.6 provides, in relevant

part, that:

> Paragraph (b) identifies specific matters about which a lawyer's statements would not ordinarily be considered to present a substantial likelihood of material prejudice, **and should not in any event be considered prohibited by the general prohibition of paragraph (a)**. Paragraph (b) is not intended to be an exhaustive listing of the subjects upon which a lawyer may make a statement, but statements on other matters may be subject to paragraph (a).

Mass. R. Prof. C. 3.6, cmt. [4] (emphasis supplied). Comment [1] to Rule 3.6 provides,

that:

> It is difficult to strike a balance between protecting the right to a fair trial and safeguarding the right of free expression. Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence. **On the other hand, there are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy**.

Mass. R. Prof. C. 3.6, cmt. [1] (emphasis supplied).

There is a long list of cases involving corporate misconduct that unreasonably put

the public at risk all in the pursuit of the almighty Dollar. Exploding cars, uncountable

cigarette-related deaths, defective airbags, asbestos cases against manufacturers,

dangerous breast implants and many others demonstrate that such conduct happens all too

often and calls out for redress and remedy. Consider just two quotes from such cases:

- "There was evidence that Ford could have corrected the hazardous design defects at minimal cost but decided to defer correction of the shortcomings by engaging in a cost-benefit analysis balancing human lives and limbs against corporate

10

profits. Ford's institutional mentality was shown to be one of callous indifference to public safety. There was substantial evidence that Ford's conduct constituted "conscious disregard" of the probability of injury to members of the consuming public." *Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757, 813 (1981) [involving exploding cars].

- "These are serious criminal violations. In essence, Bard knowingly and willfully kept adverse information from the FDA, made product changes that affected the safety or effectiveness of angioplasty catheters produced by its USCI Division without the required FDA approval, and illegally did testing on human beings without the required exemption from the FDA." *United States v. C.R. Bard, Inc.*, 848 F. Supp. 287, 288 (D. Mass. 1994); *Talbott v. C.R. Bard, Inc.*, 63 F.3d 25 (1995), *petition for cert. dismissed*, 517 U.S. 1230 (1996) (related civil wrongful death case).

It is not just Plaintiff's counsel that believes that Everclear is an unreasonably dangerous and defective product that should be illegal. According to the *New York Times*, sale of Everclear *is* illegal in at least 11 states. *See* Alex Williams, *How Everclear Became a Pandemic Favorite*, New York Times (July 9, 2020)[6]; *see also* Grossman, Elyse R., Jane Binakonsky, and David Jernigan. 2017. "The Use of Regulatory Power by U.S. State and Local Alcohol Control Agencies to Ban Problematic Products." *Substance Use & Misuse* 53 (8): 1229–38. doi:10.1080/10826084.2017.1402054. The risks of horrific injury and death from Everclear that were known, and it appears intentionally obscured, by the defendant makers and distributors of Everclear in the name of product differentiation and the quest for financial gain are – to put it mildly – troubling. They are unquestionably the type of safety information that should be known to the public. And, they are unquestionably the type of safety information that – absent a demonstration of actual and real risk to the jury pool -- Plaintiff's counsel must be permitted to use as they choose to the greatest extent possible while remaining in compliance with the Mass. R.

---

[6] Available at https://www.nytimes.com/2020/07/09/style/how-everclear-became-a-pandemic-favorite.html (last visited on Nov. 14, 2025); *see also* Ashlie Hughes, *10 Things You Should Know About Everclear*, Sept. 21. 2021, available at https://vinepair.com/articles/ntk-everclear-guide/ (last visited Nov. 14, 2025).

Prof. C. Such uses *may* include: (1) seeking witnesses (e.g., former employees and other victims); (2) seeking information from other similar cases; and, (3) issuing appropriate information about the safety risks of a product that can cause horrific injuries like those at issue in this case.

Indeed, such a ruling would be in accord with *Joyce v. Town of Dennis*, 736 F. Supp. 2d 321, 324-325 (D. Mass. 2010) on which the Defendant relies. There, the Court denied a motion for sanctions reasoning that:

> she has not shown that the statements had a reasonable or substantial likelihood of materially prejudicing or interfering with a fair trial. The entire premise for her claim of prejudice is that [the Attorney's] statements are likely to influence the jury trial on damages by ridiculing Joyce and souring public opinion.
>
> That proposition is unpersuasive. First, there is no reason to believe that press coverage will engender prejudice because the statements were made months before any trial, this case is not widely publicized and the Court can mitigate any potential prejudice through jury voir dire and jury instructions.

*Joyce*, 736 F. Supp. 2d at 324-325.

## Conclusion

For the reasons stated above, the Plaintiff requests that the Court deny Defendant's motion that fails to meet the standard of the issuance of a protective order and that would otherwise inappropriately prevent Plaintiff's counsel from: (1) making use of publicly available information; and, (2) otherwise proceeding in accord with Mass. R. Prof. C. 3.6 related to the lawful use of information obtained during the litigation of this case.

Respectfully submitted,
Yvette Yuri Lanuza Digan,
By Her Attorney,

*/s/ David W. Heinlein*

_____
David W. Heinlein (BBO#550598)
HEINLEIN BEELER MINGACE &
HEINEMAN, P.C.
276 Union Avenue
Framingham, MA 01702
(508) 626-8500
dheinlein@hbmhlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ David W. Heinlein*

_____
David W. Heinlein, Esq.