**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Yvette Yuri Lanuza Digan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:25-cv-40091 |
| v. | ) | |
| | ) | |
| Luxco, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT LUXCO, INC.'S, SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS
MOTION FOR A CASE MANAGEMENT ORDER REGARDING COUNSEL'S
SOCIAL MEDIA ACTIVITY**

During the Court's December 22, 2025, hearing on Defendant Luxco, Inc.'s ("Luxco") Motion to Dismiss, ECF No. 9, and Motion for Case Management Order, ECF No. 43, the Court invited the parties (if they wanted) to file supplemental briefing to further address topics discussed at the hearing. At the January 5, 2026, hearing, the Court stayed further briefing and ruling on the Motion to Dismiss. However, Luxco's Motion for Case Management Order (the "Motion") addressing the conduct of Attorney Adam P. Clermont, counsel who originally filed, among other pleadings, Plaintiff's July 13, 2025, Complaint, ECF No. 1, and the August 4, 2025, Amended Complaint, ECF No. 5, against Luxco, remains pending. Therefore, Luxco files this supplemental briefing to demonstrate that the Court has authority to order Mr. Clermont to remove the 7-minute video (the "Video"), attached as Exhibit 6 to Luxco's memorandum in support of the Motion, from all social media accounts and websites under *his* control. A link to this Video remains on Mr. Clermont's personal LinkedIn page as well as on other social media platforms (discussed *infra*).

Mr. Clermont's dissemination of the Video—which contains misleading and false statements about Luxco and its employees and counsel—on social media violates at a minimum the Court's Local Rules of Professional Conduct prohibiting any "lawyer[s] associated with a civil

200548445

action" from "making an extrajudicial statement" that is reasonably likely to "interfere with a fair trial." L.R., D. Mass. 83.2.1(h). Rather than address the Court directly at the original November 19, 2025, hearing on the Motion, Mr. Clermont chose not to attend. When the Court stated it would not move forward on the hearing without Mr. Clermont's presence, Mr. Clermont chose to file a "Withdrawal of Appearance," ECF No. 50, the following morning. In that pleading, Mr. Clermont states he was asking the Clerk of this Court to "withdraw [his] appearance . . . as an attorney for Plaintiff, . . . in the above-captioned matter." *See* ECF No. 50. However, Mr. Clermont's request to withdraw his appearance "in the above-captioned matter" cannot circumvent the Court's broad authority to remedy his egregious conduct that continues to affect and jeopardize this case, witnesses, and Luxco's ability to ensure its Seventh Amendment right to a fair trial.

There is no evidence before the Court that Mr. Clermont, who is licensed to practice in this Court, does not continue to represent Plaintiff *outside* "the above-captioned matter," and/or have a financial interest in the case for the services he has rendered to Plaintiff. In fact, Mr. Clermont posted on his public LinkedIn page *just yesterday* (on January 8, 2026) touting his role as "Attorney for [Plaintiff] Yvette Digan" on a September 23, 2025, Howie Carr Show entitled "Howie Carr's Meet the Experts . . . Adam Clermont Attorney for Yvette Digan." *See* Ex. 33 (PDF capture of Mr. Clermont's LinkedIn post, timestamped at 11:59 a.m. (CT) on January 8, 2026, the time the undersigned's office captured it from his LinkedIn page). Luxco requests that this Court exercise its broad authority to order an attorney licensed before this Court to remove a public statement that threatens a litigant's right to a fair trial consistent with the Seventh Amendment.

## BACKGROUND

Luxco respectfully incorporates by reference the facts and supporting exhibits set forth in its memorandum in support of the Motion. *See* ECF No. 44.

## ARGUMENT

The Seventh Amendment provides a right to a jury trial in civil lawsuits. U.S. Const. amend. VII; Fed. R. Civ. P. 38(a). "One touchstone of a fair trial is an impartial trier of fact," meaning "a jury capable and willing to decide the case solely on the evidence before it." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)) (internal quotations omitted); *see also Am. Sci. Eng'g, Inc. v. Autoclear, LLC*, 606 F. Supp. 2d 617, 625 (E.D. Va. 2008) ("The Supreme Court has held that civil litigants have a constitutional right to an impartial jury." (citing *Thiel v. S. Pac. Co.*, 328 U.S. 217, 220 (1946))).

I.    **Mr. Clermont's conduct violates, among other things, the District of Massachusetts's Local Rules of Professional Conduct**.

This Court's Local Rules prohibit lawyers from "making an extrajudicial statement" about a case that has the potential to interfere with a defendant's right to a fair trial:

> A lawyer associated with a civil action shall not during the investigation or litigation make or participate in making an extrajudicial statement . . . which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to: (1) Evidence regarding the occurrence or transaction involved; (2) the character, credibility, or criminal record of a party, witness, or prospective witness; . . . (4) His or her opinion as to the merits of the claims or defenses of a party . . . ; [or] (5) Any other matter reasonably likely to interfere with a fair trial of the action.

L.R. 83.2.1(h); *see also* Mass. R. Prof. C. 3.6(a) ("A lawyer who . . . has participated in the . . . litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial

likelihood of materially prejudicing an adjudicative proceeding in the matter."). This rule applies whether or not the lawyer who made the statement currently represents a party in the case. L.R. 83.2.1(h) (stating that the rule applies to all lawyers "associated with" a case); *see also* Mass. R. Prof. C. 3.6(a) (stating that the rule applies to "[a] lawyer who is participating *or has participated* in the . . . litigation of a matter" (emphasis added)).

To find a violation of Local Rule 83.2.1(h), the Court need only conclude that there is a "reasonable likelihood" that dissemination will "interfere" with a fair trial. L.R. 83.2.1(h). This is not meant to be a high bar. Rules regarding extrajudicial statements by attorneys are intended to prevent "evils that threaten the integrity of the judicial system," including "statements that will prejudice the jury venire even if an untainted jury panel can eventually be found." *In re Morrissey*, 168 F.3d 134, 140 (4th Cir. 1999) (emphasis added) (citing *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1068 (1991)). The "reasonable likelihood" standard adopted by this Court for extrajudicial statements by attorneys has been upheld as constitutionally permissible by other courts. *See id.* at 139–40 (upholding the constitutionality of a local rule virtually identical to Local Rule 83.2.1(h)); *United States v. Cutler*, 58 F.3d 825, 835 (2d Cir. 1995) (same). The rule asks only whether the statement will "interfere" with a fair trial, meaning whether the statement will "be in opposition" to or "hinder[] or impede[]" a fair trial, not whether the statement will "cause" or necessarily result in an unfair trial. *See Interfere*, Merriam-Webster's Collegiate Dictionary 652 (11th ed. 2012).

Mr. Clermont violated this Local Rule 83.2.1(h) because the Video, if left on the social media pages controlled by Mr. Clermont, presents a reasonable likelihood of impeding the selection of an unbiased jury. Mr. Clermont clearly expected the Video to be "disseminated by means of public communication," *see* L.R. 83.2.1(h), because he posted it to at least one of his public social media accounts and subsequently stated to Luxco's counsel that videos about

Everclear's alleged "explosive risks" were circulating online.  ECF No. 44-5 (email from Mr. Clermont providing a link to a video shared on his LinkedIn to an employee of Luxco—such conduct is also addressed in the Motion); ECF No. 44-31 at 2 (letter from Mr. Clermont stating: "The videos circulating on the internet, demonstrating Everclear's explosive risks, are already gaining traction.  *Once the algorithms kick in, they'll be pushed directly to the very consumers* Luxco targeted with its social media ads." (emphasis added)).  The Video is also "reasonably likely to interfere with" Luxco's right to a "fair trial of the action."  *See* L.R., D. Mass. R. 83.2.1(h).  It aims to damage Luxco's character and reputation by making false statements about the company and its counsel and to harass, intimidate, and possibly threaten potential witnesses.  *See* ECF No. 44 at 14-16.  The Video in no way serves—nor has Plaintiff's current counsel even attempted to argue that it serves—a legitimate litigation purpose.  The Video has since been (and continues to be) widely disseminated on multiple popular websites, including on the subreddit pages at Boston University, which risks tainting the jury pool.  *Id.* at 14.

Each day Mr. Clermont is allowed to keep the Video posted on accounts or websites he controls heightens the risk of broader dissemination; the risk that a potential future juror will come across, and be preconditioned by, its prejudicial contents; the risk that prospective witnesses will be threatened and deterred from openly testifying; and as a result, the risk of an irreparably biased jury and an unfair trial.  But the Court need not let the risk continue unabated.  The Court has— and should exercise—broad authority to remedy Mr. Clermont's actions, which are "reasonably likely to interfere with a fair trial of the action."  L.R. 83.2.1(h)(5); *see infra* Section II.

## II.    The Court has broad authority to ensure compliance with its Local Rules and to protect a defendant's right to a fair trial.

The Court has broad authority to ensure compliance with its Local Rules, and more importantly, to protect a defendant's right to a fair trial.  Indeed, "fairness in a jury trial, whether

criminal or civil in nature, is a vital constitutional right." *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 98 (3d Cir. 1988); *see also In re Morrissey*, 168 F.3d at 140 ("Courts have agreed that protecting the right to a fair criminal trial by an impartial jury whose considerations are based solely on record evidence is a compelling state interest." (citing *Gentile*, 501 U.S. at 1075, & *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966))); *Greenwood*, 464 U.S. at 554 ("One touchstone of a fair trial is an impartial trier of fact . . . ."); *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514–15 n.2 (10th Cir. 1998) (explaining that "the reasoning of the Sixth Amendment cases concerning juror bias is germane to the analysis of" the Seventh Amendment).

Mr. Clermont's request for withdrawal from this case does not reduce the Court's power to correct his harmful misconduct.  The Court is broadly empowered to ensure that *all* bar members comply with its local rules of professional conduct.  *See Sensitech, Inc. v. LimeStone FZE*, 581 F. Supp. 3d 342, 350 (D. Mass. 2022) ("A district court has 'great leeway in the application and enforcement of its local rules.'" (quoting *United States v. Roberts*, 978 F.2d 17, 20 (1st Cir. 1992))). The Local Rules are careful not to limit the Court's ability to remedy misconduct that affects its own courtroom:

> Nothing in these rules shall limit the authority of a judge to impose any other sanctions otherwise permitted by law, including without limitation sanctions for contempt of court or for litigation misconduct.

L.R. 83.6.4(b).  In other words, only another source of binding law can limit the Court's ability to respond to an attorney's misconduct.  Nothing in the Constitution, United States Code, or United States Reports prohibits this Court from exercising this authority over a withdrawn attorney. Indeed, all attorneys who are admitted or authorized to practice before this Court explicitly consent to this Court's jurisdiction "for any disciplinary proceedings arising out of any claims of

misconduct arising under these rules," Local Rule 83.6.2, which highlights that this Court's authority over an attorney does not dissipate following a withdrawal.

The plain language of the relevant Local Rules covers the conduct of Mr. Clermont. The provision violated by Mr. Clermont's social media posts, Local Rule 83.2.1(h), applies to all lawyers "associated with" a case, and that phrase encompasses an attorney who previously appeared as counsel of record but later withdrew from the same case. Courts agree with this straightforward interpretation of this phrase. In *In re Goode*, the Fifth Circuit held that a local rule referring to any "lawyer *associated with* the prosecution or defense" reached an attorney who was not counsel of record but had "assisted [the counsel of record] with trial preparation, attended several of the pretrial hearings, and passed notes to [the counsel of record] during the proceedings." 821 F.3d 553, 558 (5th Cir. 2016) (emphasis added). The court emphasized that such involvement was sufficient to make the attorney "associated with" the case. *Id.*

Mr. Clermont's involvement in this case is even greater. He was counsel of record for Plaintiff from this case's inception in July 2025 until at least November 20, 2025, when he purported to withdraw. *See* ECF No. 50. During his time as counsel of record, Mr. Clermont drafted and filed Plaintiff's original and amended complaints. *See* ECF No. 1 at 37; ECF No. 5 at 43. He also drafted and filed Plaintiff's briefing in opposition to Luxco's motion to dismiss. *See* ECF No. 17 at 11; ECF No. 34 at 11. Mr. Clermont posted the Video to his social media in August 2025, while he was indisputably still counsel of record. *See* ECF No. 44 at 14. Even though he purports to have withdrawn, Mr. Clermont may well still maintain a financial interest in the outcome of this case. He is therefore "associated with" this litigation notwithstanding his purported withdrawal. Moreover, he even posted on his personal LinkedIn page as of yesterday

about, among other things, his role as counsel for Plaintiff when he appeared on the September 23, 2025 Howie Carr Show.  *See* Ex. 33.

An attorney cannot pick and choose when the Local Rules apply.  They apply uniformly to all members of the bar:  "All attorneys who are admitted or authorized to practice before this court shall comply with its rules of professional conduct in all matters they handle before this court."  L.R. 83.6.1(d).  Allowing a lawyer to avoid his obligations to comply with the rules—and to avoid any consequences from violating them—simply by withdrawing from an active case would make no sense.  If the Court were to conclude that it lacks authority to contemporaneously address the misconduct of a withdrawing lawyer, this would open the door to an attorney violating the Court's rules to obtain an unfair, improper advantage for a client and then withdrawing from the proceeding to ensure that the client—and oftentimes the offending attorney himself—could continue to benefit from the attorney's misconduct.  Rather than be forced to accept such gamesmanship, the Court instead retains the ability to order an attorney to correct his misconduct, especially when it continues to disrupt the Court's proceedings.

Even absent local rules regulating attorney conduct, "a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity."  *Gannett Co. v. DePasquale*, 443 U.S. 368, 378 (1979); *see also United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000).  This allows a trial court to "take protective measures," such as placing limits on an attorney's out-of-court speech, "even when they are not strictly and inescapably necessary."  *See DePasquale*, 443 U.S. at 378; *Sheppard*, 384 U.S. at 363 ("[T]he cure [to prejudicial pretrial publicity] lies in those remedial measures that will prevent the prejudice at its inception.  The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences."); *Gumbel v. Pitkin*, 124 U.S. 131, 144 (1888) (observing that courts have

"equitable powers . . . over their own process, to prevent abuses, oppression, and injustice").  In sum, when confronted with an out-of-court statement that threatens a litigant's right to a fair trial, the Court is empowered under both the Local Rules and its inherent judicial authority to take remedial measures to counter that threat.

## III.    The requested CMO is consistent with the First Amendment.

Plaintiff did not explicitly oppose Luxco's motion for a case management order on First Amendment grounds.  *See* ECF No. 48 at 1–4.  Plaintiff instead vaguely asserted that "plaintiffs have a presumptive right to share with the public what they have learned during . . . litigation," which derives from the public's "right of access to all court proceedings."  ECF No. 48 at 2.  Even if Plaintiff properly raised a First Amendment challenge, it is well established that a court can place limits on a lawyer's speech that occurs both within and outside of the courtroom.  *See, e.g.,* *Sheppard*, 384 U.S. at 361 ("[T]he trial court might well have proscribed extrajudicial statements by any lawyer . . . which divulged prejudicial matters . . . ."); *Sacher v. United States*, 343 U.S. 1, 8 (1952) ("The interests of society in the preservation of courtroom control by the judges are no more to be frustrated through unchecked improprieties by defenders.").  "Although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in the context of both civil and criminal trials."  *Brown*, 218 F.3d at 424 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)); *see also Pennekamp v. Florida*, 328 U.S. 331, 366 (1946) (Frankfurter, J., concurring) ("In securing freedom of speech, the Constitution hardly meant to create the right to influence judges or juries.").

An order requiring a lawyer to remove an extrajudicial statement that is reasonably likely to interfere with a litigant's right to a fair civil trial is consistent with the First Amendment.  *Brown*, 218 F.3d at 426–27 ("[A] trial court may restrict extrajudicial comments by trial participants, including lawyers, parties, and witnesses, based on a determination that those comments present a

'reasonable likelihood' of prejudicing a fair trial."); *see also In re Morrissey*, 168 F.3d at 138 (explaining that Local Rules limiting lawyers' extrajudicial comments further "the important governmental interest of protecting both the accused's and the public's right to a fair trial"); *United States v. Tijerina*, 412 F.2d 661, 666–67 (10th Cir. 1969) (affirming the trial court's order that limited the extrajudicial discussion of a pending criminal case by all attorneys after it determined that the "'reasonable likelihood' of prejudicial news . . . would make difficult the impaneling of an impartial jury and tend to prevent a fair trial"); *United States v. Bulger*, 2013 WL 3338749, at *3– 8 (D. Mass. 2013) (explaining that the court's prior order requiring counsel to comply with Local Rule 83.2.1(a) when making public statements is consistent with the First Amendment).

## IV.    The relief requested by Luxco is narrowly tailored and feasible.

Though the presence and circulation of the Video on the Internet is damaging to Luxco's ability to receive a fair trial, Luxco is not asking this Court to order Mr. Clermont to scrub the Video from the entire Internet.  Nor is Luxco asking the Court to order any persons over which it may lack authority to take any actions to remove the Video from the Internet.

Rather, all Luxco is asking the Court to do at this stage is to order Mr. Clermont *himself* to remove the Video from any social media account or website under *his* control.  This is entirely feasible.  For example, as of the time of this filing, the Video is still posted to Mr. Clermont's personal LinkedIn page.  Mr. Clermont has complete control over his own LinkedIn account and can easily remove this post.  To the extent Mr. Clermont controls any other accounts addressed in the Motion that have posted the Video on other platforms, he likewise has the ability to remove such posts.

## <u>CONCLUSION</u>

For the reasons stated herein and in Luxco's initial memorandum in support of its Motion, the Court should enter an Order requiring Mr. Clermont to immediately remove the Video from all social media accounts and/or websites under his control, and for such other and further relief the Court deems just and appropriate under the circumstances.

Respectfully submitted,

/s/ Carl J. Pesce

Carl J. Pesce (admitted *pro hac vice*)
Benjamin S. Harner (admitted *pro hac vice*)
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri  63101
(314) 552-6000
(314) 552-7000 (fax)
cpesce@thompsoncoburn.com
bharner@thompsoncoburn.com

Chad Higgins, BBO No. 668924
Zack Brandwein, BBO No. 697327
Samantha Peters, BBO No. 705783
Joseph E. Long, BBO No. 713886
DENTONS BINGHAM GREENEBAUM LLP
One City Center, Suite 11100
Portland, Maine 04101-6420
(207) 810-4955
chad.higgins@dentons.com
zack.brandwein@dentons.com
samantha.peters@dentons.com
joseph.long@dentons.com

and

Peter M. Durney, BBO No. 139260
Christopher J. Hurst, BBO No. 682416
SMITH DUGGAN CORNELL & GOLLUB, LLP
101 Arch Street, Suite 1100
Boston, MA 02110
Tel: (617) 228-4400
Fax: (617) 482-3917
pdurney@smithduggan.com
churst@smithduggan.com

*Attorneys for Defendant,*
*Luxco, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2026, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

*/s/ Carl J. Pesce*