**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| YVETTE YURI LANUZA DIGAN,<br>Plaintiff,<br>v.<br>LUXCO, INC.,<br>Defendant. | Civ. No.: 4:25-cv-40091-MRG |

**ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS [ECF No. 9]**

**GUZMAN, J.**

Ms. Yvette Yuri Lanuza Digan ("Digan" or "Plaintiff") brings this action against Luxco, Inc. ("Luxco" or "Defendant"), the manufacturer and distributor of Everclear, a 190-proof distilled alcohol, alleging claims of negligence, breach of warranty, and violations of Mass. Gen. Laws ch. 93A ("Chapter 93A"). [See Am. Compl., ECF No. 5]. Defendant Luxco moves to dismiss several claims of this action for lack of subject matter jurisdiction and for failure to state a claim for relief. FED. R. CIV. P. 12(b)(1), (6).

Luxco seeks to dismiss: (1) Plaintiff's request for injunctive relief; (2) Counts I, II, and VII to the extent they are based on the Federal Hazardous Substance Act ("FHSA"); (3) Count III to the extent it is based on an Everclear marketing campaign creating a voluntarily undertaken duty; and (4) Count VII in its entirety or to the extent the claim is based on labeling protected under Chapter 93A's safe harbor provision. [See ECF No. 9; Def.'s MTD Mem., ECF No. 10].

For the reasons stated below, the Partial Motion to Dismiss is **GRANTED IN PART**.

## I. BACKGROUND

The following relevant facts are taken primarily from the allegations asserted in the Plaintiff's Amended Complaint. For purposes of evaluating this motion to dismiss, the alleged facts are accepted as true, and all plausible inferences are made in the Plaintiff's favor. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citing A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)").

Courts may take judicial notice of documents and filings outside the pleadings that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). "The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c). As requested by Defendants, [ECF No. 11], the Court takes judicial notice of the five attached exhibits representing the Certificate of Label Approval (COLA) applications related to the pending claims. See OrbusNeich Med. Co., Ltd., BVI v. Boston Scientific Corp., 694 F.Supp.2d 106, 111 (D. Mass. 2010) ("The public filing of [a] document with a regulatory agency [ ] makes it a proper subject of judicial notice, at least with regard to the fact that it contains certain information, though not as to the truth of its contents.").[1]

[1] The Court notes Plaintiff's objection to judicial notice, citing that the attached exhibits are incomplete copies of the applications approved by the U.S. Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau. [See ECF No. 18]. The Court looks to the online versions of these approvals, as provided by the hyperlinks in the Defendant's filings, rather than the attached Exhibits, for completeness. Accordingly, the Court reviews these documents with regard to the information provided therewithin, not for the truth of its contents. See OrbusNeich Med. Co., 694 F.Supp. 2d at 111.

A court may also take judicial notice of the docket of any court case, including cases which are concurrently before it. See Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001). Therefore, this Court takes judicial notice of the filings made in the three concurrent cases filed by Plaintiff or other parties in this Court, which are based on the same set of facts and events as the present matter. [See Digan v. Pharris et al, 4:25-cv-11448-MRG; Digan et al v. MGP Ingredients, Inc. et al, 4:26-cv-40099-MRG; and Lopes v. Pharris et al., 4:25-cv-40082-MRG].

**A. Relevant Facts**

This suit arises from an incident that occurred on May 13, 2025, during a party at the Worcester Polytechnic Institute's ("WPI") chapter of Zeta Psi's fraternity house, where a fraternity member poured Everclear on or near a fire in the backyard. [See Am. Compl. ¶¶ 20–21]. A "fireball" erupted when Everclear was poured, engulfing the nearby Plaintiff in flames (hereinafter referred to as "the Everclear incident"). [Id. ¶ 22]. The Plaintiff was transported to a nearby Worcester hospital and then transferred to Massachusetts General Hospital in Boston, Massachusetts for treatment of severe burns, which required numerous surgeries and ongoing treatment. [Id. ¶¶ 23–24].

Everclear is a highly potent (95% ethanol, 190-proof) distilled alcoholic beverage and presents an exceptional and unique fire hazard compared to lower-proof spirits. [Id. ¶¶ 25, 27]. When high-proof ethanol, such as Everclear, is poured on or near an open flame, the flame may travel up the stream, into the bottle, and ignite the gas vapors inside the bottle, resulting in an explosion known as "flame jetting." [Id. ¶¶ 3, 27, 29]. The fire that caused Plaintiff's significant burn injuries resulted from such an explosion involving Everclear. [Id. ¶ 30].

Plaintiff asserts that other high-proof alcohols, in addition to warning labels, have incorporated a "fire arrestor" (a metal mesh at the mouth of the bottle), to prevent ignition and flame jetting. [Id. ¶¶ 67, 69]. Everclear's packaging does not incorporate a fire arrestor. [See id.]

Defendant Luxco, understanding the extreme flammability of Everclear and other similar products, previously including detailed warnings prominently on the front of the Everclear bottle. [Id. ¶¶ 31–33]. The warning labels provide:

> CAUTION: DO NOT APPLY TO OPEN FLAME. KEEP AWAY FROM FIRE, HEAT AND OPEN FLAME – CONTENTS MAY IGNITE OR EXPLODE. DO NOT CONSUME IN EXCESSIVE QUANTITIES. NOT INTENDED FOR CONSUMPTION UNLESS MIXED WITH NON-ALCOHOLIC BEVERAGE," "CAUTION!! EXTREMELY FLAMMABLE – HANDLE WITH CARE," and "WARNING OVERCONSUMPTION MAY ENDANGER YOUR HEALTH.

[Id. ¶¶ 33–35]. In 2018, Defendant changed the Everclear label, reducing the prominent, detailed warning on the front label to a limited warning located on the back of the bottle, which read, "WARNING: FLAMMABLE LIQUID. HANDLE WITH CARE." [Id. ¶¶ 40–41]. At the time Luxco changed the Everclear label, it retained the prominent, detailed warning on other 190-proof Luxco products, including Golden Grain and Crystal Clear, which were compositionally identical and carried the same extreme flammability risk. [Id. ¶¶ 5, 36, 45].

After the 2018 warning label reduction, Luxco expanded marketing of Everclear for non-consumption purposes, including household and culinary use. [Id. ¶¶ 5, 46–49]. Some uses Defendant promoted on its website and social media included Everclear as fuel for candles and for use in cooking near an open flame. [Id. ¶¶ 49–50]. Specifically, Luxco posted images on its official website of Everclear being poured into a cooking pan on a gas burner, a bottle of Everclear next to a lit gas burner, and a lighter igniting a candle being fueled by Everclear. [Id.] In a post on the official Everclear Instagram account ("@diywitheverclear"), the Everclear-fueled candle picture contained an obscured disclaimer, in small font in a similar color to the background, reading

"DISCLAIMER: High-proof alcohol is flammable. Handle carefully and keep away from flames until ready to ignite. Follow all safety precautions. Keep out of reach of children and pets." [Id. ¶¶ 51–53].

The Amended Complaint describes three other incidents between August and December 2024 (one of which also occurred in Massachusetts) to illustrate the dangers of Everclear's flammability, where Everclear ignited and individuals suffered severe burns. [Id. ¶¶ 58–64].

### B. Procedural History[2]

Plaintiff filed her Complaint on July 13, 2025. [See Compl., ECF No. 1]. Prior to an answer, she amended her complaint to allege seven counts against Defendant seeking compensatory damages and injunctive relief to prohibit the distribution and sales of Everclear in Massachusetts until remedial action as to the label and product design are taken. [Am. Compl. at 42–43]. Defendant filed its Partial Motion to Dismiss the Amended Complaint on September 4, 2025. [ECF No. 9]. Plaintiff timely filed her opposition to the Partial Motion to Dismiss. [Pl.'s MTD Mem., ECF No. 17]. Additional briefing was requested, granted, and filed by both parties in September 2025. [See ECF Nos. 24, 27, 28, 31–34].

On December 22, 2025, the Court heard oral argument on the Partial Motion to Dismiss and invited the parties to file supplemental briefings given the activity in the concurrent related matters to this action. [ECF No. 53]. Following subsequent status conferences in this and the related matters, this case was stayed to allow Plaintiff to file amended pleadings in the related cases and give Defendants in all actions the opportunity to respond. [ECF No. 58]. Between March

[2] In addition to the procedural history regarding the Partial Motion to Dismiss, there were substantial filings regarding attorney conduct concerning social media usage and attorney communications in this matter, which contributed to the delay in the Court's consideration of the pending Partial Motion to Dismiss. [See ECF Nos. 40–50, 55–56, 64–68].

and May of 2026, both parties filed supplemental briefings on the Partial Motion to Dismiss in this action. [ECF Nos. 63, 69, 70].

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1): Motion to Dismiss Due to Lack of Subject Matter Jurisdiction

If a motion to dismiss for subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) are concurrently before a district court, "absent good reason to do otherwise, [the court] should ordinarily decide the 12(b)(1) motion first." Ayyadurai v. Galvin, 560 F. Supp. 3d 406, 410 (D. Mass. 2021) (quoting Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995)). "[S]tanding is a prerequisite to a federal court's subject matter jurisdiction." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). Therefore, "[a] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim." Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 894 F. Supp. 2d 144, 150 (D. Mass. 2012) (quoting Edelkind v. Fairmont Funding, Ltd., 539 F. Supp. 2d 449, 453 (D. Mass. 2008)). On a motion to dismiss for lack of subject-matter jurisdiction, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). "If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss." Id.

It is the Court's ongoing obligation to ensure that it has jurisdiction to opine on the matters before it, including Article III standing. See Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006). "Under Article III, a case or controversy can exist only if a plaintiff has standing to sue – a bedrock

constitutional requirement . . . ." United States v. Texas, 599 U.S. 670, 675 (2023); U.S. CONT. art. III § 2, cl. 1. Standing is assessed at the time of filing and must be maintained through the litigation. Carney v. Adams, 592 U.S. 53, 59 (2020); see Wittman v. Personhuballah, 578 U.S. 539, 543 (2016); Lujan v. Defs. Of Wildlife, 504 U.S. 555, 569 n.4 (1992) (noting the "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed."). To establish standing, Plaintiffs must demonstrate (1) that they suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief. Lujan, 504 U.S. at 560–61. The injury is considered imminent "'if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur.'" Massachusetts v. United States Dep't of Health & Hum. Servs., 923 F.3d 209, 222 (1st Cir. 2019) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)). "Importantly, 'plaintiffs must demonstrate standing . . . for each form of relief that they seek (for example, injunctive relief and damages).'" In re Evenflo Co., 54 F.4th 28, 34 (1st Cir. 2022) (quoting TransUnion v. Ramirez, 594 U.S. 413, 431 (2021)). Although pleadings may establish standing to seek damages, standing for injunctive relief must be established as well and to a more demanding standard. See City of Los Angeles v. Lyons, 461 U.S. 95, 105–07 (1983) (failure to allege sufficient likelihood of future injury deprives a federal court of Article III "jurisdiction to entertain [the count] of the complaint" seeking injunctive relief.)

The district court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" when ruling on a Rule 12(b)(1) motion. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citations omitted). A plaintiff cannot assert a proper jurisdictional basis "merely on unsupported conclusions or interpretations of law" or "[s]ubjective characterizations or conclusory descriptions of a general scenario which *could* be

dominated by unpleaded facts[.]" Murphy, 45 F.3d at 522 (citations omitted). When an issue of a plaintiff's standing is before a federal court, it may look beyond the "pleadings to determine if jurisdictional facts exist." See Rothschild v. Cree, Inc., 711 F. Supp. 2d 173, 180 (D. Mass. 2010).

### B. Fed. R. Civ. P. 12(b)(6): Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss pursuant to 12(b)(6), the complaint must state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). On a motion to dismiss for failure to state a claim, the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

## III. DISCUSSION

### A. Plaintiff's Standing to Request Injunctive Relief

Defendant challenges Plaintiff's standing to bring her claims for injunctive relief on the ground that she cannot meet her burden to show she faces an imminent risk of substantial future harm from Everclear. [See Def.'s MTD Mem. at 2]. Plaintiff proffers that injunctive relief is appropriate under two theories: (1) Digan suffers ongoing concrete harm due to the physical and psychological injuries initiated by the Everclear incident; and, (2) Digan is at risk of future injury

caused by Defendant because Everclear continues to be marketed for do-it-yourself ("DIY") uses with its reduced warning label. [See Pl.'s MTD Mem. at 5; ECF No. 34 at 2–3]. Here, Plaintiff has clearly and sufficiently alleged an injury related to past harm which may award her compensatory damages resulting from the Everclear incident. [See Am. Compl. ¶¶ 84–90 (alleging extensive medical care totaling over $600,000 for significant burns and emotional harm)]. However, neither theory successfully establishes standing for a claim of injunctive relief. See Evenflo, 54 F.4th at 34; TransUnion, 594 U.S. at 431; O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 451 (D. Mass. 2018), on reconsideration, 370 F. Supp. 3d 204 (D. Mass. 2019).

To establish injury in fact for standing for injunctive relief, the Plaintiff must plausibly demonstrate "the threat [of injury is] actual and imminent, not conjectural or hypothetical[.]" Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). "A threatened injury confers standing to seek injunctive relief if it is certainly impending, or there is a substantial risk that the harm will occur." O'Hara, 306 F. Supp. 3d at 451 (internal quotations omitted). The alleged harm cannot be "too attenuated or too speculative[.]" Nat'l Ass'n of Gov't Emps., Inc. v. Yellen, 120 F.4th 904, 910 (1st Cir. 2024) (quoting Roe v. Healey, 78 F.4th 11, 20 (1st Cir. 2023)) (internal quotation omitted). Additionally, as noted in Lyons, the fear of the threat of repeated injury cannot be based merely on subjective apprehensions.

> The reasonableness of [the plaintiff's] fear is dependent upon the likelihood of a recurrence of the alleged[] . . . conduct. It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.

Lyons, 461 U.S. at 107 n.8. Additionally, the imminent injury must be to the *plaintiff*, since "a hypothetical future injury to other unnamed [persons] does not give [a] plaintiff[] standing." Evenflo, 54 F.4th at 41.

### 1. *Ongoing Emotional and Physical Harm Does Not Equate to a Threat of Repeated Injury*

First, Plaintiff alleges her continued emotional and physical harm is sufficient to support standing for injunctive relief, arguing that Supreme Court precedent in Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 184–85 (2000), supports her assertion that "emotional distress and continuing medical vulnerability [are] concrete harm[s] sufficient to support standing." [Pl.'s MTD Mem. at 5; ECF No. 34 at 2–4].

The facts of Friends of the Earth are materially different than those presented here. There, the Court held that the plaintiffs suffered an injury sufficient for injunctive relief due to their curtailed recreational use of a river. Friends of the Earth, 528 U.S. at 184–85. The Court further explained that the plaintiffs suffered a new injury each day they refrained from kayaking because they considered the river unsafe as a result of the defendant's continuing pollution. Id. at 184–85. Here, by contrast, the alleged ongoing harm in this case—"emotional distress and continuing medical vulnerability"—are not injuries comparable to the curtailed recreational use at issue in Friends of the Earth. [ECF No. 34 at 2]. Digan's injuries are sustained and continuous, whereas, in Friends of the Earth, each recreational visit to the river that is thwarted by unsafe levels of pollution poses a renewing harm. More importantly, the alleged harm here arises from a single origin, a completed explosive incident involving Everclear, not from an ongoing course of polluting conduct. [See id at 2–3]. Thus, unlike in Friends of the Earth, there is no continuing wrongful conduct that causes a new injury each day.

To establish standing for forward-looking injunctive relief, the plaintiff must plausibly show a "substantial risk that the [future] harm will occur." Nat'l Ass'n of Gov't Emps, 120 F.4th at 910 (citing Healey, 78 F.4th at 20) (internal quotation omitted). The injuries Plaintiff suffered resulted from attending a social gathering at a school where she was not, and currently is not, a

student; where a fraternity member poured Everclear on a fire, the flame traveled up into the bottle, ignited the gas vapors, caused a flame jetting explosion, and engulfed Plaintiff. [See generally Am. Compl.]. Plaintiff does not allege she purchased Everclear or that she intends to purchase Everclear in the future. [Id.] Nor does Plaintiff provide any facts in the Amended Complaint to support a plausible inference that she will be in a similar situation in the future. [Id.]

There are no allegations in the Amended Complaint which would support the re-occurrence of such an explosion. For injunctive relief, it is the "*reality* of the threat of repeated injury" and not merely Plaintiff's apprehensions or emotional distress that stem from the past injury, which satisfy the standing requirement. Lyons, 461 U.S. at 107 n.8. The ongoing emotional and physical injuries—such as Digan's alleged nightmares, flashbacks, and ongoing medical treatment—follow from the Everclear explosion and are "not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." Id.

Therefore, this theory fails to support Plaintiff's standing for injunctive relief.

**2. *Plaintiff Fails To Allege That She Is At Risk of Future Harm from Defendant's Continued Marketing and Labeling of Everclear***

Plaintiff next asserts that because she is college-aged and may be in social drinking situations in the future, she is therefore at risk of sustaining a similar Everclear-related injury while Defendants alleged marketing and labeling practices persist. [Pl.'s MTD Mem. at 5]. Plaintiff supports this claim with reports of individuals who have been allegedly burned from other explosive Everclear incidents—none of which include other college social gatherings or outdoor fires. [Am. Compl. ¶¶ 58–65].

To sustain a claim for injunctive relief, the *plaintiff* must be at risk of imminent and substantial harm, and risk of future injuries to hypothetical other parties does not satisfy this requirement. See Evenflo, 54 F.4th at 41 (rejecting argument that standing is satisfied for

injunctive relief where the plaintiff fails to allege any risk of harm to themselves from a product and merely asserts hypothetical injury to unnamed other parties).

Here, as in Evenflo, there are insufficient factual allegations to plausibly support the inference that *Plaintiff* is at risk of future injury by the Defendant, even under her theory that being college-aged places her at higher risk. To the contrary, Plaintiff arrived in the United States from Hong Kong to attend a summer program at Boston University in 2025, and does not allege that she intends to continue her education at a school in Massachusetts, where Everclear is legally sold; nor does she allege that she intends to purchase or use Everclear in the future. [Am. Compl. ¶ 14].

Further, Plaintiff relies on Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 971 (9th Cir. 2018) for the proposition that injunctive relief is appropriate where a product "threatens public safety." [Pl.'s MTD Mem. at 5]. Davidson, however, does not relieve Plaintiff of her burden to demonstrate risk of future harm *to her*. 889 F.3d at 971 (holding that "[a] consumer's inability to rely on a representation made on a package, even if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising"). The complaint in Davidson was premised on a theory of false advertising, alleging that a company advertised disposable wipes as "flushable" where in fact, they were not, causing potential harm to home plumbing systems and municipal wastewater treatment facilities. Id. at 961–62. The complaint in Davidson included facts that alleged the plaintiff's continued desire to purchase flushable wipes, that she regularly encountered the product in stores, and was continually confronted with the product without knowing if the advertised flushability was true. Id. at 970–71. In answering a "close question" of whether standing for injunctive relief had been established in Davidson, the Ninth Circuit found there was standing where the plaintiff "adequately alleged that *she* faces an imminent or actual threat of future harm due to [the defendant]'s false advertising."

Id. at 971 (emphasis added); see In re Evenflo, 707 F.Supp.3d 103, 139–40 (D. Mass. 2023) (comparing Davidson's reasoning with First Circuit precedent, determining plaintiffs lacked standing for injunctive relief after alleging a "hypothetical injury.").

Unlike in Davidson, the Amended Complaint is silent on Digan's intent or desire to purchase or use Everclear in the future and does not support an inference that the labeling will cause Plaintiff future injury. [See generally Am. Compl.]. Beyond her age and the assertion that Everclear is associated with college social drinking, the Amended Complaint fails to allege sufficient facts to plausibly support the inference that Digan herself faces a substantial and imminent risk of future injury from Everclear explosions. [See id. ¶¶ 13–14]. Davidson is further distinguishable from this case, at it focused on *false* marketing and advertising, whereas Plaintiff here, challenges the *sufficiency* of the warning labels, claiming that the warning that Everlcear is "flammable" is insufficient to warn consumers of the true dangers of the product, not that she or another inappropriately relied on a false assertion regarding the label of the product. [See Am. Compl.].

Here, the mere possibility of future harm is not enough, and the risk of similar harm in this case is far too attenuated to establish standing. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 410 (2013). Courts have repeatedly held that a "highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." Id. (rejecting standing for injunctive relief where the court articulated five links in the chain of events that would result in the alleged injury of the Government intercepting the plaintiff's communications); Healey, 78 F.4th at 21 (1st Cir. 2023) (finding the sequence of events required to result in similar injury related to COVID remote school instruction was too attenuated to support a claim for injunctive relief);

Lyons, 461 U.S. at 105–06 (holding there was not a real and immediate threat of similar injury occurring again because it would require several prerequisite events to result in a new incident).

For Plaintiff to suffer similar harm a second time, it would inarguably require a "highly attenuated chain of possibilities," including being at another social gathering in the United States where Everclear is present, poured on a fire, and flame jets into an explosion that engulfs Plaintiff *again*. Plaintiff fails to allege facts in the complaint that support a plausible inference that future injury is certainly impending and has not met her burden to establish standing for injunctive relief.

In sum, Plaintiff lacks standing to pursue injunctive relief against Luxco because she has not alleged that she faces an imminent and substantial risk of future harm. Therefore, Defendant's motion to dismiss as to Plaintiff's request for injunctive relief must be **GRANTED**.

**B. COUNTS I, II, and VII: Plaintiff's Reliance on Alleged Violations of the Federal Hazardous Substances Act ("FHSA")**

Alcoholic beverages are subject to extensive federal regulations under the Federal Food, Drug, and Cosmetic Act ("FDCA") and the Federal Alcohol Administration Act ("FAA Act"), which establish requirements governing, among other things, labeling, marketing, interstate commerce, and adulteration.. 21 U.S.C. §§ 301, *et seq*; 27 U.S.C. §§ 201–219. Under the FAA Act, the Alcohol and Tobacco Tax and Trade Bureau ("TTB") oversees federal labeling requirements for alcoholic beverages, including by requiring manufacturers of distilled spirits to obtain a Certificate of Label Approval ("COLA"). [ECF No. 5-1 at 16].[3]

[3] The Defendant obtained the required COLA for both the pre- and post-2018 Everclear labels. [See Am. Compl. ¶ 39]. Under the FAA Act regulations, distilled spirit labels are prohibited from containing "any statement or representation, irrespective of falsity, that is misleading to consumers as to the age, origin, identity, or other characteristics of the distilled spirits, or with regard to any other material factor," including where it "directly creates a misleading impression, or if it does so indirectly through ambiguity, omission, inference, or by the addition of irrelevant, scientific, or technical matter." [See Am. Compl. ¶ 81; ECF No. 5-1 at 16]; 27 C.F.R. §5.122.

The Federal Hazardous Substances Act ("FHSA"), by contrast, regulates hazardous substances and requires, among other things, prominent warning labels and a description of the precautionary measures that should be taken with products under its regulatory ambit. [Am. Compl. ¶ 80]; 16 C.F.R. § 1500.121.(b). The FHSA explicitly does not regulate food products, including alcoholic beverages. [See Am. Compl. ¶ 79]; 15 U.S.C. § 1261(f)(2) ("The term "hazardous substance" shall not apply to . . . foods, drugs and cosmetics subject to the Federal Food, Drug, and Cosmetic Act"); 21 U.S.C. § 321(f) ("The term 'food' means . . . articles used for food or drink for man or other animals").

Plaintiff alleges that because Luxco marketed and advertised Everclear for household and non-beverage uses, it "took Everclear squarely outside the food exemption under 15 U.S.C. § 1261 (f)(2)," and therefore the product must meet the labeling requirements under the FHSA as a hazardous substance.[4] [Am. Compl. ¶¶ 77–80]. This theory, that Everclear failed to abide by FHSA labeling requirements, underpins assertions in Plaintiff's claims of Design Defect, Failure to Warn, and Breach of Chapter 93A (Counts I, II, and VII). [Id. ¶¶ 95, 102, 141(f)].

Defendant moves to dismiss Counts I, II, and VII insofar as they are premised on an alleged violation of the FHSA, asserting that the FHSA does not apply to Everclear, which is properly classified as a "food" under the FDCA and falls within the FDCA exception under the FHSA regulations for "hazardous substances." [Def.'s MTD Mem. at 7–11]. Plaintiff responds that her claims sound in common-law negligence principles, and do not depend solely on whether the

[4] Under the statute, a hazardous substance may be defined as, "[a]ny substance or mixture of substances which is toxic, corrosive, an irritant, a strong sensitizer, flammable or combustible, or generates pressure through decomposition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children." 16 C.F.R. § 1500.3(4)(i)(A).

FHSA regulates Everclear. [Pl.'s MTD Mem. at 5–6]. Plaintiff fails to provide sufficient case law in support of this expanded use theory. [See id.].

After considering these arguments, the Court declines to presently resolve whether the FHSA applies to Everclear. The Court does not construe Counts I and II[5] as being premised solely on the theory that Everclear is subject to the FHSA. Rather, Plaintiff has pleaded those claims under ordinary negligence principles that are not tied to the FHSA, [see Am. Compl. ¶¶ 91–104], and Defendant at this juncture, does not argue the Plaintiff has failed to allege the essential elements to these causes of action. Accordingly, whether the FHSA applies to Everclear is immaterial to the resolution of this motion, and the Court will not opine on that question. Rhode Island v. Shell Oil Prods. Co., 35 F.4th 44, 53 (1st Cir. 2022) (quoting PDK Laboratories Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment)) ("[I]f it is not necessary to decide more, it is necessary not to decide more.").

The Court therefore **DENIES** Defendant's motion to dismiss Counts I and II on this ground. Defendant may renew its FHSA argument at summary judgment if the developed factual record makes resolution of the issue necessary to the claims as pleaded.

The parties should bear this ruling in mind in conducting discovery, and should avoid unnecessary discovery directed solely to resolving an issue that is immaterial to the claims as pleaded.

### C. COUNT III: Negligence (Voluntary Undertaking of a Duty)

Plaintiff alleges that Defendant voluntarily marketed Everclear to DIY customers, promoted non-beverage uses, and re-designed its packaging to encourage and facilitate expanded

[5] Defendant challenges the FHSA regulatory theory for Count VII in its Motion to Dismiss, which Plaintiff fails to oppose in her brief. Given that Count VII is dismissed for other reasons, see *infra* Section III.D., the Court will not address the Count in the present analysis.

use of the product that went far beyond its approved purpose as an alcoholic beverage. [Am. Compl. ¶¶ 106–107, 109–111].[6] Plaintiff further alleges that Luxco voluntarily decided to include safety warnings, including that Everclear was "flammable," and therefore assumed a duty to ensure the product was safe for such expanded marketed applications. [Id. ¶¶ 108–109]. As with the other claims discussed above, Defendant challenges a narrow theory of liability as to Count III, asserting that Count III must be dismissed insofar as it is based on the theory that Luxco voluntarily undertook a duty when marketing Everclear for DIY and non-beverage purposes. The Court agrees.

For negligent performance of undertaking to render services, Massachusetts follows the Restatement (Second) of Torts § 323, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). In a negligence suit, defining the scope of a duty, or a duty assumed, is a fact-specific inquiry. "If a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking." Thorson v. Mandell, 525 N.E.2d 375, 378 (Mass. 1988) (holding that the YWCA's "creation of a policy against gymnastics in the auditorium was not an undertaking to render services for the protection of its users"); see Cottam v. CVS Pharmacy, 764 N.E.2d 814, 821 (Mass. 2002) (holding that,

[6] Plaintiff alleges that Luxco marketed Everclear for uses related to ink paints, laundry detergent, skin scrubs, disinfectants, perfume, shower sprays, jewelry cleaner, glass cleaner, deodorant spray, tinctures, and culinary uses. [Am. Compl. ¶¶ 47, 49, 107].

although the learned intermediary doctrine prevents a pharmacy from owing a duty to warn customers, "a pharmacy, like any other person or entity, may voluntarily assume a duty that would not otherwise be imposed on it, and thus may voluntarily assume a duty to provide information, advice or warnings to its customers.").

However, courts have found that a theory for breach of a voluntarily-assumed duty, made through advertisements and general marketing aimed at the general public, fails to plausibly state a claim for relief. See Evans v. Lorillard Tobacco Co., 990 N.E. 2d 997, 1026 (Mass. 2013) (collecting cases as to cigarette manufacturer marketing and the Frank Statement); Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir.1999), cert. denied, 528 U.S. 1105 (2000) ("Converting a company's marketing into a special undertaking to inform the public about the known risks of its products would subject every manufacturer that advertises its products to liability for a 'special duty' created by such marketing, and that duty would be violated by every material omission in such advertising.") Therefore, marketing a product for a specific purpose does not amount to a special undertaking recognized as a service necessary for the protection of others.

Given this precedent, Plaintiff's theory that Luxco's marketing Everclear for DIY and non-beverage purposes created a special duty to ensure the protection of its consumers is not recognized by the doctrine of negligent performance of undertaking to render services in this jurisdiction and therefore is insufficient to state a claim for relief. See Evans, 990 N.E. at 1026; Restatement (Second) of Torts § 323. Even if marketing could be considered a special duty that could be voluntarily assumed, there are no facts alleged to support that Plaintiff or anyone at the fraternity party ever saw or relied upon the purported DIY or non-beverage marketing material. Essential elements for this claim, that the undertaking at issue relates to "render[ing] services," and that the

harm is suffered *because* of the other's reliance upon the undertaking, are not alleged here. The Court reads the allegations of Count III to more appropriately fit under the pending claims of design defect (Count I), failure to warn (Count II), or negligent marketing (Count IV). Given that framing, and the sparse briefing related to this claim, [Def.'s MTD Mem. at 11–12; Pl.'s MTD Mem. at 6–7], the Court determines that Plaintiff has failed to state a claim for relief in Count III.

Therefore, Count III, as alleged, must be dismissed.

### D. COUNT VII: Breach of Chapter 93A

Plaintiff alleges that Defendant engaged in unfair or deceptive acts in violation of Mass. Gen. Law. ch. 93A, § 2 ("Chapter 93A") by deliberately removing critical safety warnings from the Everclear bottles, marketing the product for dangerous uses, failing to implement readily available safety features, and violating labeling regulations. [Am. Compl. ¶ 141]. Although Plaintiff followed the proper procedures to bring a claim under Chapter 93A, she is not eligible to bring suit under this cause of action.

Chapter 93A provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful," and any person injured by such acts or practice "may bring an action . . . for damages and such equitable relief[.]" Chapter 93A §§ 2(a), 9(1). To state a claim, a consumer plaintiff must allege "(1) [a]n [unfair or] deceptive act or practice on the part of the defendant;[7] (2) an injury or loss suffered by the plaintiff, and (3)

[7] The SJC has established that "an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive or unscrupulous'; and 'causes substantial injury to consumers,'" plus the 'conduct must generally be of an egregious, non-negligent nature.'" Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 70–71 (1st Cir. 2020) (quoting Walsh v. TelTech Sys., 821 F.3d 155, 160 (1st Cir. 2016)). Similarly, an act or practice is deceptive "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" Id. at 70 (quoting Walsh, 821 F.3d at 160 (alteration in original) (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 47687 (Mass. 2004))).

a causal connection between the defendant's [unfair or] deceptive act or practice and the plaintiff's injury." Wagner v. Fed. Home Loan Mortg. Corp., 494 F.Supp.3d 80, 87 (D. Mass. 2020) (citation modified).

Additionally, the defendant's conduct must occur within "trade or commerce." Chapter 93A, § 2(a). Chapter 93A, "allows *any* person who has been injured by trade or commerce indirectly affecting the people of this Commonwealth to bring a cause of action." Ciardi v. F.Hoffmann-La Roche, Ltd., 762 N.E.2d 303, 309 (Mass. 2002) (alterations in original). Although a plaintiff need not be a direct purchaser, or in direct contractual privity, with the defendant to pursue a claim under Section 9, there must be a commercial link between the parties. Id. (citing Kattar v. Demoulas, 739 N.E.2d 246, 258 (Mass. 2000) ("Parties need not be in privity for their actions to come within the reach of c. 93A")); Steinmetz v. Coyle & Caron, Inc., 862 F.3d 128, 141 (1st Cir. 2017) (There must be a commercial link, as "some business, commercial, or transactional relationship is required" to exist between the parties). That statutory requirement may be satisfied if "the plaintiff used the product, even if it was sold to another, and was injured as a result of the defendant's failure to warn." Rafferty v. Merck & Co., Inc., 92 N.E.3d 1205, 1223 (Mass. 2018).

Here, Plaintiff does not allege that she purchased the bottle of Everclear involved in the incident, nor does she allege that she used the bottle of Everclear prior to her injury. She alleges no facts in support of her claim as a direct or indirect purchaser of the product, and her arguments that Luxco violated federal labeling regulations are unavailing, as it does not give Plaintiff the ability to pursue this specific cause of action. Given that Plaintiff has not alleged sufficient direct

or indirect commercial links between herself and Luxco to identify as a consumer of the product, she fails to state a plausible claim for relief under the consumer protection statute.[8]

Therefore, Count VII must be dismissed in whole.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Partial Motion to Dismiss, [ECF No. 9], is **GRANTED IN PART**. Plaintiff's claims for injunctive relief are **DISMISSED.** The motion to dismiss Counts I, II, and VII to the extent they are based on the Federal Hazardous Substance Act ("FHSA") is **DENIED**. The motion to dismiss Count III and Count VII is **GRANTED**.

**SO ORDERED.**

Dated: September 16, 2026

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

[8] Plaintiff's assertion that she "is prepared to amend her Amended Complaint to allege she was a consumer of the product, read the front label of the bottle and made decisions based on the absence of a warning," to sustain her claim under Count VII is not a procedurally proper request to amend her filings. [Pl. MTD Mem. at 8 n.1]; see Fed. R. Civ. P. 15(a)(2); Ortiz v. Inform Diagnostics, Inc., 789 F. Supp. 3d 156, 159 (D. Mass. 2025) (denying motion for leave to amend a complaint as "procedurally deficient" in the absence of a "proposed amended complaint for the Court to consider"); Traincroft, Inc. v. Ins. Co. of the State of Pennsylvania, No. 14-10551, 2014 WL 12796262, at *3 (D. Mass. Sept. 5, 2014) (noting that "it is of course strongly preferable that a party seeking leave to amend include a proposed amended complaint with its motion"). Plaintiff has had *ample* time to formally request to amend her pleadings, [see *supra* Section I.B. Procedural History], the Court is not inclined to grant this informal request. Additionally, an amendment would be futile if those underlying statements are insincere, as the matter would ultimately be decided at summary judgment precluding the claim.